IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 22, 2025

## STATE OF TENNESSEE v. SHANE SCOTT CAYWOOD

**Appeal from the Criminal Court for Bradley County**
No. 23-CR-112      Andrew M. Freiberg, Judge
_____

### No. E2024-00918-CCA-R3-CD
_____

The Defendant, Shane Scott Caywood, pleaded guilty to the sale or delivery of 0.5 grams or more of methamphetamine, a Class B felony, felony possession of drug paraphernalia, a Class E felony, and several misdemeanors. The trial court sentenced him as a Range III Persistent Offender for the Class B felony and as a Range III Career Offender for the Class E felony and ordered concurrent sentences for an effective total of twenty-five years. On appeal, the Defendant contends that the trial court erred when it denied his request for community corrections. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and J. ROSS DYER, J., joined.

Nicholas Poe-Jones, Cleveland, Tennessee, for the appellant, Shane Scott Caywood.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Shari Lynn Taylor, District Attorney General; and Ashley F. Zepeda, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts

This case arises from the Defendant's arrests for drug related charges in case numbers 23-CR-112 and 23-CR-513. The Defendant entered guilty pleas to both charges in both indictments at the same time, with the agreement including that the State would reduce all the charges in case 23-CR-513 to misdemeanors and that, in case 23-CR-112, the Defendant would enter a plea of guilty to a Class B felony and a Class E felony as

described below. In this appeal, the Defendant contends that the trial court erred when it denied him community corrections for his sentence in case 23-CR-112.

## A. Guilty Plea Hearing

At his guilty plea hearing, the State informed the trial court that it was reducing some of the indicted offenses to misdemeanors so that the Defendant would still be eligible for an alternative sentence.

The State informed the trial court that, if the case went to trial, the evidence would have proven:

> [In case number 23-CR-513] On March 27th, 2022, law enforcement was dispatched to [and address on] Spring Place Road at the Dollar General Store in reference to a subject slumped over the steering wheel of a dark-colored pickup.

> Upon arrival, they made contact with a dark-colored Nissan Frontier and observed a male asleep at the wheel. EMS arrived on scene and the male was identified as [the Defendant].

> [The Defendant] signed an AMA with EMS and stated that he was tired from working and fell asleep before going into the store.

> While walking around the vehicle, law enforcement observed what appeared to be a large baggy of marijuana in plain view in the cup holder. They conducted a probable-cause search at that time and recovered a small corner baggy containing a crystallized substance appearing to be meth; and a glass pipe in the center console; a backpack in the passenger seat with several empty baggies; and a green pill bottle containing another baggy of what appeared to be methamphetamine.

> In the glove box were more glass pipes and a magnetic lock box containing more baggies, syringes, and a note with addresses; an orange pouch containing another crystallized substance believed to be meth; a brown sandy substance that ended up being more methamphetamine; a dry organic substance appearing to be psilocybin mushrooms; an alprazolam pill; more baggies; a glass pipe; snorting straws; and more notes with directions and digital scales were recovered in the backpack.

2

That was all sent to TBI. It was approximately 14.67 grams of cannabis, one tablet of alprazolam, 4.16 grams of psilocybin, and 7 to 8 grams of methamphetamine. You'll have to forgive my math in the moment. The first sample is what law enforcement originally believed to be heroin, but ended up as methamphetamine, and that is why we have those heroin counts dismissed.

The Defendant entered a plea of guilty to misdemeanor counts for possession of marijuana, psilocybin, alprazolam, and drug paraphernalia. He also pleaded guilty to the reduced charge of simple possession of methamphetamine. The trial court indicated that it would hold a subsequent hearing on the "20-to-30 sentencing" on the methamphetamine conviction.

The State informed the trial court that, in case number 23-CR-112, it would have proven:

On November 3, 2022, law enforcement was patrolling APD-40 and observed an older white Ford F15 with a nonworking tag light. They ran the tag number through dispatch and the tag came back to a black '95 Nissan.

They activated their emergency lights and initiated a traffic stop. The driver pulled into a driveway at the end of the street and was identified as [the Defendant]. [The Defendant] provided his license. Law enforcement . . . ran that license and dispatch advised that it was revoked.

They asked [the Defendant] to step out of the truck, and when he did, law enforcement noticed several baggies in the door. They asked if he had any narcotics on his person, and he stated no, but he did have knives in his pocket and a big one on his side.

Law enforcement retrieved the knives off of his person, and one deputy found a bag of what appeared to be methamphetamine in the front pocket of his overalls. [The Defendant] was detained at that time.

They conducted a probable cause search and located a small lock box in the truck. It contained several baggies, a baggy of what appeared to be psilocybin mushrooms, and just several plastic baggies. Inside a guitar case in the back of the truck, law enforcement found a bag of what appeared to be methamphetamine, along with a set of digital scales.

3

In total in the lock box, there were six different bags of methamphetamine. The bag on [the Defendant's] person was approximately .2 grams; the bag inside the guitar case was approximately 6.3 grams. The total weight of those six baggies in the lock box was approximately 18.9 grams.

Inside the lock box was another set of digital scales and two glass pipes the two needles, and a straw. That was sent to TBI. In total there were 17.68 grams of meth[amphetamine] and 2.93 grams of psilocybin.

The Defendant offered a plea of guilty to the offenses in case number 23-CR-112. The trial court ensured the that the Defendant understood his rights and then accepted his guilty pleas in both offenses. The trial court agreed to hold a sentencing hearing and informed the Defendant that, if he was deemed a career offender, his Class E felony sentence would be six years with a release eligibility of 60%. The trial court further stated that if the Defendant was a Range III on the Class B felony, then the range was twenty to thirty years. The trial court agreed that the Defendant might be eligible for community corrections, to be determined after the sentencing hearing.

### B. Sentencing Hearing

The trial court held a sentencing hearing during which the parties presented the following evidence: The State informed the trial court that the Defendant had three prior Class B felony convictions that qualified him as a Range III offender, including two convictions for initiating the process of manufacturing methamphetamine and one for the sale and delivery of 0.5 grams or more of methamphetamine. Based upon these three convictions, and the fact that the Defendant was being sentenced for a Class B felony, the trial court found that he was a Range III Persistent Offender as it related to the current methamphetamine charge. The State then introduced multiple judgments for offenses including: DUI third, multiple convictions for driving on a revoked license, assault, and DUI fourth, possession of methamphetamine, and domestic assault. The State introduced other felony judgments, including: contraband in jail, a Class C felony; DUI fourth, a Class E felony; habitual traffic offender, a Class E felony; habitual traffic offender, a D felony, habitual offender, a Class B felony; DUI fifth offense, a Class E felony; manufacture of methamphetamine, a B felony. There were also probation violation reports based upon absconding, receiving new charges, and new arrests. The Defendant had been placed, for some period, on community corrections and failed a drug screen. He was returned to community corrections and violated conditions again by receiving new charges and violating curfew. Ultimately, his community corrections sentence was revoked.

4

The Defendant called Dale Bradford, who testified that he had known the Defendant since childhood. The Defendant worked for him for six years and always showed up on time and had a good work ethic. He followed instructions, and Mr. Bradford never saw any indication that he used drugs. Mr. Bradford recalled a time when the Defendant was arrested and no longer worked for him, but he rehired the Defendant as soon as he was released from custody.

During cross-examination, Mr. Bradford said that he was unaware that the Defendant had accrued thirty-nine criminal convictions in twenty-one years and that he would not typically hire someone with that lengthy of a criminal history. Mr. Bradford further agreed that the Defendant's twelve violations of probation, parole, and community corrections was not an example of a good track record for following instructions. Upon the trial court's questioning, Mr. Bradford said that, now knowing the extent of the Defendant's criminal history, he would not hire the Defendant again.

Becky Rakestraw testified that her husband was the Defendant's best friend. She said that the Defendant was at her house almost every day and that she considered him a friend. She said the Defendant wanted to go to a drug rehabilitation program, but they were expensive, and he could not afford it. She gave a personal account of how the Defendant helped to care for her when she injured her back. Mrs. Rakestraw said that the Defendant helped them cut wood to heat their home, helped in their garden, and helped to care for her. She said that he was a "good guy" but that drugs had gotten a hold of him. Mrs. Rakestraw described the Defendant as a drug user and not a drug seller.

Michael Staton testified that he had known the Defendant for fifteen years as the two worked together as carpenters. When Mr. Staton was diagnosed with cancer, the Defendant helped take him to doctor's appointments and in multiple other ways. Mr. Staton had encouraged the Defendant to seek drug treatment and join him at church.

Mr. Station said that he was unaware that the Defendant did not have a driver's license at the time that the Defendant was driving him to his doctor's appointment. He agreed that, while helpful, the Defendant was violating the law.

Erin McKee, the Defendant's sister, was aware of the Defendant's drug history and had encouraged him to seek rehabilitation, but he had never gone because he could not afford it. She recently suffered a heart attack, and the Defendant had helped to care for her. He worked "all over the place."

The Defendant offered an allocution during which he apologized for his actions. He said he was eligible to take the test to get his license returned and was working toward that. He asked for a chance to be somebody to society and not a nuisance.

After the Defendant's allocution, the trial court ordered that he undergo a drug test since he had been released from custody for six weeks. Beverly Cameron, a probation and parole officer present at the hearing, administered a urine test to the Defendant. The results showed that the Defendant tested positive for amphetamines and methamphetamine. He was negative for all other substances.

The trial court noted that the Defendant was a Range III persistent offender for the B felony methamphetamine conviction for which he was being sentenced and qualified as a Range III career offender for the felony possession of drug paraphernalia conviction.

Based upon this evidence, the trial court sentenced the Defendant to twenty-five years for the Class B felony conviction and six years for the Class E felony. He ordered the sentences to run concurrently for a total effective sentence of twenty-five years. The trial court said it relied most heavily on the Defendant's prior convictions. The trial court acknowledged the witnesses who had described the Defendant as compassionate and helpful. He did note, however, that the Defendant's employer had said he would no longer hire him given his extensive criminal history. The trial court noted the Defendant's twelve past violations of an alternative sentence, and it found no applicable mitigating factors. It relied upon the Defendant's genuine remorse and consideration of the least severe sentence when it sentenced him to a mid-range sentence of twenty-five years, to be served at 45%, with credit for time served. The trial court noted that the six years was to be served at 60% but concurrently with the other sentence.

The trial court considered the manner of service of sentence. It found that the Defendant was an eligible offender for community corrections pursuant to Tennessee Code Annotated section 40-36-106. It then stated:

> But the bottom line is, is that does not mean that you're an appropriate candidate for community corrections. We're talking about a 25-year term. We're talking about an individual, again, with 39 convictions over 21 years who's violated any alternative sentence. So when you look at whether prison is necessary, you turn, are you appropriate for alternatives, I just don't find there's anything within his past that indicates he's amenable to correction or following laws or court mandates.
>
> When you look at 40-35-10[3] . . . sentences involving confinement should be based on the following considerations, I do find that it is necessary to protect society by restraining [the Defendant] because he has a long history of criminal conduct. I do want to note, although I put much less weight on it, that pursuant to Exhibit 11 there is a need to deter drug related offenses

within our 10th Judicial District having gone up in recent years 115 percent, basically double. There is some proof in the record of the need for deterrence, but I put much less weight on that. I put it on his long history of criminal conduct and the fact that he has failed at every alternative. So measures less restrictive than confinement have sadly, recently and frequently, been applied to him unsuccessfully.

So I find pursuant to 40-35-103, subparts (1) Alpha and Charlie, and to a lesser degree the need to deter drug-related offenses in our locality, 115 percent increase, that confinement is necessary. I just don't find that he's an appropriate candidate.

Also want to note Court's decision on that is the validated risk and needs assessment showing obviously the same opinion that this Court holds that he is a high risk of re-offense and that's bore out by the presumptive urinalysis test given here today.

So I do find that confinement is appropriate, that he is not an appropriate candidate for community corrections despite meeting the minimal eligibility criteria as outlined in law.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied him a community corrections sentence. The State counters that the record supports the trial court's decision given the Defendant's prior criminal history and his previous failures to abide by an alternative sentence. We agree with the State.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The *Bise* standard of review also applies to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860-61 (Tenn. 2013). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401, *Sentencing Comm'n Cmts.*; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

Tennessee Code Annotated section 40-35-103 states that trial courts should look to the following considerations in deciding whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining an individual who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

The trial court should also consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). "[T]he burden of establishing suitability for probation rests with the defendant." T.C.A. § 40-35-303(b). We review a trial court's decision regarding alternative sentencing under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The record here shows that the trial court weighed the appropriate factors in denying the Defendant an alternative sentence. Weighing heavily in the court's analysis were the Defendant's extensive past criminal history and his twelve prior violations of an alternative sentence. The trial court further found the need for deterrence in the face of escalating drug offenses necessitated confinement. These findings are sufficient to support the trial court's decision to deny a community corrections sentence, and the trial court did not abuse its discretion in so doing. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based upon the foregoing, we affirm the trial court's judgments.

_____s/ *ROBERT W. WEDEMEYER*___
ROBERT W. WEDEMEYER, JUDGE

8